UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SAVISTA, LLC, | CASE NO. 08:24-00351 |
| Plaintiff, | |
| v. | |
| GS LABS, LLC, | **COMPLAINT** |
| Defendant. | |

**Background Facts and Overview**

1. This is a collection case.

2. Plaintiff Savista, LLC ("Savista") provides accounts receivable management and other services to healthcare companies. Savista has received the "Peer Reviewed by HFMA® designation through the Healthcare Financial Management Association based on effectiveness, quality, price, value, and customer support. Also, Healthcare Business Review named Savista one of the Top 10 Healthcare Business Process Outsourcing Companies for 2022 and 2024. It also has achieved Great Place to Work Certification based on confidential survey responses from its own employees for the last three consecutive years.

3. Defendant GS Labs, LLC ("GS Labs") was formed in January 2020, with its roots in the testosterone replacement therapy business and its principal place of business in a strip mall near 180th and Center Streets in Omaha.

4. When the COVID pandemic hit shortly after GS Labs was established, GS Labs shifted from testosterone replacement therapy and so-called anti-aging treatments to COVID testing. GS Labs quickly expanded into other states, often setting up offices in recreational vehicles.

5. From the beginning, GS Labs engaged in conduct that would make it difficult to collect the bills it sent out. That conduct led Blue Cross entities to file lawsuits in three different states

alleging that GS Labs engaged in fraudulent billing practices. That conduct by GS Labs also led Medica insurance to deny payment for work done by GS Labs, leading to two lawsuits by GS Labs against Medica – both of which were dismissed under Federal Rule of Civil Procedure 12(b)(6). The conduct by GS Labs also led to disputes with public health officials, led to investigations by state Departments of Insurance, and caused thousands of individuals to receive COVID test results weeks after they should have been delivered, rendering them worthless.[1] GS Labs denied that it had engaged in fraudulent behavior, and it contended that its billing practices were proper under federal laws governing COVID testing.

6. It was clear from GS Labs' founding that it would be difficult to collect its accounts receivable. Indeed, Chris Erickson from City+Ventures (owner of GS Labs) told the *Omaha World Herald* in October 2021 that GS Labs had charged high prices because of the expected difficulty in dealing with insurance carriers.[2]

7. Given the great difficulty in collecting bills from GS Labs, GS Labs entered into a contract on November 22, 2021, for Savista to work on Accounts Receivable Services, including collection for GS Labs.

---

[1] *See* Tom Scheck et al, *Testing the Limits: How a Covid-19 testing company accused of sloppiness, fraud, and profiteering kept expanding*, American Public Media APM Reports (July 28, 2022), https://www.apmreports.org/story/2022/07/28/gs-labs-covid-testing-accused-of-sloppiness-fraud-profiteering; Lauren Melendez, *I walked around with COVID for a week: GS Labs, subcontractor issue delays test results,* WOWT news (December 19, 2020) https://www.wowt.com/2020/12/19/i-walked-around-with-covid-for-a-week-because-of-late-results-gs-labs-subcontractor-issue-delays-covid-info/; Cindy Gonzalez, *Omaha company finds opportunity and controversy in COVID testing*, Omaha World Herald (October 1, 2021, updated May 25, 2023), https://omaha.com/livewellnebraska/omaha-company-finds-opportunity-and-controversy-in-covid-testing/article_b6a90196-209f-11ec-b8b5-bfb80b3a161e.html#tncms-source=login.

[2] Cindy Gonalez, *Omaha company finds opportunity and controversy in COVID testing*, Omaha World Herald (October 1, 2021, updated May 25, 2023), https://omaha.com/livewellnebraska/omaha-company-finds-opportunity-and-controversy-in-covid-testing/article_b6a90196-209f-11ec-b8b5-bfb80b3a161e.html#tncms-source=login

8. That Agreement was amended on March 30, 2022, to provide that Savista would receive the greater of a percentage of collections or $1,440,000 for its difficult work collecting GS Labs' controversial bills.

9. After that First Amendment, it became clear that operational problems at GS Labs would make it even more difficult to collect and process its account receivables. Those operational problems included GS Labs firing multiple employees at its headquarters, which led to checks that should have been deposited in bank accounts instead sitting in unopened envelopes or otherwise remaining unprocessed at GS Labs' headquarters.

10. On March 31, 2023, shortly after GS Labs had settled the lawsuit filed against it by Blue Cross of Kansas City, GS Labs and Savista entered into a Second Amendment to their Agreement. Among other things, this Second Amendment – dated over three years after the COVID pandemic began – provided that Savista would receive a percentage of collections on GS Labs' bills but eliminated the guarantee that Savista would receive at least a minimum payment. Because there was no guaranteed minimum amount, the Second Amendment and its accompanying Statement of Work increased the contingent rates that Savista would be paid for collections.

11. After that Second Amendment, GS Labs did not pay Savista's invoice of $339,804.82 for work done in April 2023 within 15 days of the invoice date as the contract required. Furthermore, GS Labs did not dispute the invoice within the contractually-specified period of 15 days for disputing an invoice. It thus is contractually barred from disputing that invoice. GS Labs later paid only $93,398.23 of that invoice. The rest remains unpaid.

12. GS Labs also failed to pay anything for the $282,366.07 invoiced for Savista's work during May 2023, or the $310,952.78 invoiced for Savista's work during June 2023, or the $34,234.65 invoiced for Savista's work during July 2023. To date, no payments on those invoiced amounts have

been made.

## The Parties

13. Savista is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 200 North Point Center East, Suite 101, Alpharetta, Georgia 30022. Savista's sole member is Savista Holdco, LLC, a Delaware Limited Liability Company. In turn, the sole member of Savista Holdco, LLC is Savista Holdco II, Inc., a Delaware corporation with its principal place of business in Georgia. Plaintiff Savista is a citizen of Delaware and Georgia.

14. GS Labs is a limited liability corporation duly organized and existing under the laws of the State of Nebraska and maintains its principal place of business at 17650 Wright Street, Suite 5, Omaha, Nebraska 68130. The sole member of GS Labs, LLC is CDSK Holdings, LLC. In turn, the sole member of CDSK Holdings, LLC is City Ventures Enterprises, LLC. The members of City Ventures Enterprises, LLC are City Ventures Investments, LLC, Chris Erickson, and Daniel White. The members of City Ventures Investments, LLC are Chris Erickson and Daniel White. Chris Erickson and Daniel White are citizens of Nebraska, and GS Labs is a citizen of Nebraska.

## Jurisdiction and Venue

15. This Court has subject matter of this dispute under 28 U.S.C. § 1332. There is complete diversity of citizenship. Plaintiff is a citizen of Delaware and Georgia, and Defendant is a citizen of Nebraska. Furthermore, the amount in controversy, exclusive of interest and costs, exceeds $75,000.

16. Venue is proper under 28 U.S.C. § 1391. GS Labs is located in Nebraska, and a substantial part of the events and omissions giving rise to the claims occurred in Nebraska.

17. GS Labs is subject to personal jurisdiction in Nebraska.

**Factual Background**

18. GS Labs was formed in January 2020. It had its roots in the testosterone replacement therapy business, and its initial plan was to start a so-called wellness spa that would include cool sculpting and treatments that supposedly were "anti-aging."

19. When the COVID pandemic hit, GS Labs started COVID testing.

20. In 2021 and 2022, Blue Cross organizations in three different states filed lawsuits alleging that GS Labs engaged in fraudulent billing practices. On July 20, 2021, Blue Cross and Blue Shield of Kansas City filed a lawsuit in the United States District Court for the Western District of Missouri. The lawsuit was Case No. 21-cv-00525, and it asserted a claim for Declaratory Judgment. On October 14, 2021, Premara Blue Cross filed a lawsuit against GS Labs in the United States District Court for the Western District of Washington. That lawsuit was Case No. 21-cv-1399. Premara Blue Cross asserted claims under (a) the Washington Consumer Protection Act, (b) ERISA, and (c) the federal Declaratory Judgment statute. On March 1, 2022, BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota filed a lawsuit in the United States District Court for the District of Minnesota, Case No. 22-cv-00513. That Minnesota lawsuit asserted claims for (a) violations of the Minnesota Consumer Fraud Act, (b) the Minnesota Uniform Deceptive Trade Practices Act, (c) fraud, (d) ERISA, (e) the federal Declaratory Judgment statute, and (f) unjust enrichment.

21. On November 23, 2021, GS Labs and Savista entered into a Master Services Agreement. Among other things, Savista had the difficult job of collecting on GS Labs' bills.

22. GS Labs and Savista entered into a First Amendment to the Master Services Agreement dated March 30, 2022. That First Amendment provided that the Master Services Agreement "is modified to include the attached SOW for Accounts Receivable Augmentation Services." (First Amendment ¶ 1). It provided: "Except as expressly modified by this First Amendment, the terms and

conditions of the Agreement shall remain in full force and effect." (*Id*. ¶ 2).

23. The Statement of Work attached to that First Amendment stated that it would commence on the Effective Date of the First Amendment and would continue for 12 months from the Live Status Date. (First Amendment Statement of Work ¶ 1.1).

24. The Statement of Work attached to that First Amendment also provided that Savista would be "due the greater of $1,440,000 or 2.5% of Collections on Referred Accounts" at the end of the term of the First Amendment. (*Id*. ¶ 4.1).

25. After GS Labs proposed a Second Amendment, the parties entered into it on March 31, 2023. The Second Amendment provided that the Master Services Agreement and prior Amendment were modified "to include the Attached SOW for Accounts Receivable Workdown Services." (Second Amendment ¶ 1). That Second Amendment also provided that "[e]xcept as expressly modified by this Second Amendment, the terms and conditions of the Agreement shall remain in full force and effect." (*Id*. ¶ 2).

26. Among other things, the Statement of Work for Accounts Receivable Workdown Services attached to the Second Amendment (1) moved to a fully contingent fee approach that eliminated GS Labs' potential exposure to a minimum fixed amount that it would owe Savista as the First Amendment had provided, and (2) distinguished between the collection of accounts receivable that were not then the subject of litigation, arbitration, Letter of Agreement, or payer settlement negotiations, on the one hand, and accounts that were the subject of any of those things, on the other hand.

27. That Statement of Work for Accounts Receivable Workdown Services defined "Collections" as follows: "<u>Collections</u> means the total sum of monies collected or posted by Savista or Client [GS Labs], and includes applicable payments received by Client for clinical services

rendered for Referred Accounts." (Statement of Work to the Second Amendment ¶ 3).

28. The Statement of Work for Accounts Receivable Workdown Services referred to a "Term 1 Attribute" and a "Term 2 Attribute." It stated: "<u>Term 1 Attribute</u> means the tag applied to an account for actions completed during the initial agreement effective June 1, 2022 - March 31, 2023." (*Id*. ¶ 3). It also stated: "<u>Term 2 Attribute</u> means the tag applied to an account for actions completed during the term for the Live date of this SOW." (*Id*.).

29. That Statement of Work first specified the contingent compensation to be paid Savista for Collections that were not then in arbitration, litigation, letter of agreement, or payer settlement negotiations. It said:

> "**For Collections on Client Referred Accounts after the Live Date of this SOW,** *Savista shall be due a rate of 42% for all Collections, regardless of the date Savista denoted attribute applied.* This includes all accounts in the placed open inventory, **excluding** accounts currently in arbitration, litigation, letter of agreement ("LOA") or payer settlement negotiations. **Refer to SOW, Exhibit A** for the applicable inventory placed - a detailed listing of applicable inventory shall be provided. For Client Referred Accounts within SOW Exhibit A, if no Savista attribute has been applied thus far, and the only touch performed is posting a payment, Savista will post such payment and the attribute will not be updated and no contingency rate will apply. Payment for Collections, shall be on a monthly basis with appropriate supporting documentation reconciled between bank deposits and payments posted."" (*Id*. ¶ 4.1(i)) (emphasis added).

30. The Statement of Work provided two different contingent rates for Collections that were then the subject of arbitration, litigation, letters of agreement, or payer settlement negotiations. It stated:

(ii) For Client Referred Accounts identified as currently in arbitration, litigation, LOA, or payer settlement negotiation status, Savista shall be due 8% of Collections for accounts with a Savista attribute. **Refer to SOW, Exhibit B** for the applicable total inventory placed and estimated claim actions to be further processed-a detailed listing of applicable inventory shall be provided. Payment for Collections, shall be on a monthly basis with appropriate supporting documentation reconciled between bank deposits and payments posted. Savista must increase bot machine and/or employee capacity for the volume of work required to meet the applicable timely filing requirements.

(iii) For Client Referred Accounts *within SOW, Exhibit B*, with a Savista Term 1 Attribute attached (as of 3.31.23) during the June 1, 2022-March 31, 2023 time period, Savista will be due 2.5% of Collections posted through July 31, 2023 **if no other touch was performed after March 31, 2023**. The aforementioned account listing is referenced in SOW, Exhibit C. If a Savista Term 2 Attribute is applied to Client Referred Accounts *within SOW, Exhibit B* after March 31, 2023, **for additional actions**, the 8% rate will apply. However, if a payment was received on or before March 31, 2023 and Savista ONLY posts the payment to an account with a Term 1 attribute placed by March 31, 2023 (for activity from June 1, 2022 to March 31, 2023), Savista will not update the attribute and the 2.5% rate will apply. If no Savista attribute has been applied thus far, and the only touch performed is posting payment, Savista will post such payment and the attribute will not be updated and no contingency rate will apply. Payment for Collections, shall be on a monthly basis with appropriate supporting documentation reconciled between bank deposits and payments posted. Fees for January 2023 - March 2023 shall be reduced by $70,000 per invoice, for a total fee of $210,000 on

   the inventory referenced in SOW, Exhibit C with the Savista Term 1 Attribute.

(Statement of Work to Second Amendment ¶ 4.1(ii) and (iii)) (emphasis added).

 31. The Contract states in Paragraph 10.7 of the Master Services Agreement that it is governed by Delaware law.

 32. In paragraph 10.8 of the Master Services Agreement, the parties waived the right to a jury trial.

## COUNT ONE
## BREACH OF CONTRACT INVOLVING
## THE INVOICE FOR SAVISTA'S WORK
## DURING APRIL 2023

 33. As Paragraph 33 of the Complaint, Plaintiff hereby incorporates Paragraphs 1 through 32 of this Complaint.

 34. Savista and GS Labs entered into a binding Contract. That contract included related amendments and Statements of Work.

 35. The Contract required GS Labs to pay Savista for the work that Savista performed under the Contract.

 36. Savista complied with all its obligations under the Contract.

 37. GS Labs breached the Contract by failing to make payments to Savista for Savista's Invoice 49/2023, dated May 12, 2023, for services provided under the Contract in April 2023.

 38. GS Labs did not pay that invoiced amount within fifteen days of the date of the invoice as required by Paragraph 3.3 of the Master Services Agreement.

 39. GS Labs also did not dispute that amount within fifteen days of the date of the invoice as required by Paragraph 3.3 of the Master Services Agreement if there was any dispute.

 40. GS Labs later paid $93,398.23 on that invoice, outside the fifteen-day period for

payment.

41. Because GS Labs did not dispute the invoice for April work during the contractually-specified fifteen day period for raising disputes, it is contractually barred from disputing the unpaid amount of $246,406.59.

42. GS Labs' failure to pay has proximately caused damage to Savista.

43. Paragraph 3.3 of the Master Services Agreement provides that GS Labs shall be required to pay interest on unpaid amounts at an annual rate of 18%, compounded monthly, or the maximum amount allowable by law, whichever is less.

44. GS Labs owes prejudgment interest at the rate of 18%, compounded monthly, starting on May 27, 2023, on the unpaid balance on that invoice of $246,406.59. GS Labs is required to pay prejudgment interest under Delaware law or alternatively, under Nebraska Revised Statute § 45-104.

45. The contract provides that GS Labs is obligated to pay Savista reasonable attorneys' fees, costs, and expenses for actions taken by Savista to recover unpaid fees, and GS Labs is obligated to pay those reasonable attorneys' fees, costs, and expenses.

WHEREFORE, Plaintiff demands judgment in its favor and against GS Labs on Count I of this Complaint for the unpaid $246,406.59 invoiced for Savista's work during April 2023, plus prejudgment interest as specified in this Count, plus reasonable attorneys' fees, costs, and expenses, plus post-judgment interest.

## COUNT TWO
## BREACH OF CONTRACT INVOLVING
## THE INVOICES FOR SAVISTA'S WORK
## DURING MAY, JUNE, AND JULY 2023

46. As Paragraph 46 of the Complaint, Plaintiff hereby incorporates Paragraphs 1 through 45 of this Complaint.

47. Savista and GS Labs entered into a binding Contract. That contract included related amendments and Statements of Work.

48. The Contract required GS Labs to pay Savista for the work that Savista performed under the Contract.

49. Savista complied with all its obligations under the Contract.

50. GS Labs breached the Contract by failing to make payments to Savista for (a) Savista's invoice for work done during May 2023 in the amount of $282,355.07 as reflected in Invoice Number 61/2023 dated June 15, 2023; (b) Savista's invoice for work done during June 2023 in the amount of $310,952.78 as reflected in Savista's Invoice Number 73/2023 dated July 10, 2023; and (c) Savista's invoice for work done during July 2023 in the amount of $34,234.65 as reflected in Invoice Number 84/2023 dated August 2, 2023.

51. GS Labs did not pay those invoiced amount within fifteen days of the date of the invoices as required by Paragraph 3.3 of the Master Services Agreement and to this day has not paid any of those invoiced amounts.

52. GS Labs' failure to pay has proximately caused damage to Savista.

53. Paragraph 3.3 of the Master Services Agreement provides that GS Labs shall be required to pay interest on unpaid amounts at an annual rate of 18%, compounded monthly, or the maximum amount allowable by law, whichever is less.

11

54. GS Labs owes prejudgment interest at the rate of 18%, compounded monthly, starting on fifteen days after the date of each invoice on the unpaid balance of $627,542.50 for the invoices specified in Paragraph 50 above. GS Labs is required to pay prejudgment interest under Delaware law or alternatively, under Nebraska Revised Statute § 45-104.

55. The contract provides that GS Labs is obligated to pay Savista reasonable attorneys' fees, costs, and expenses for actions taken by Savista to recover unpaid fees, and GS Labs is obligated to pay those reasonable attorneys' fees, costs, and expenses.

WHEREFORE, Plaintiff demands judgment in its favor and against GS Labs on Count II of this Complaint for the unpaid $627,542.50 invoiced for Savsista's work during May, June, and July 2023, plus prejudgment interest as specified in this Count, plus reasonable attorneys' fees, costs, and expenses, plus post-judgment interest.

## COUNT THREE
## QUANTUM MERUIT

56. As Paragraph 56 of this Complaint, Plaintiff incorporates Paragraphs 1 through 55 of this Complaint.

57. Savista asserts this claim in the alternative, in case the Contract for some reason is deemed unenforceable.

58. Savista performed services for GS Labs in April through July 2023 with the expectation that GS labs would pay for those services.

59. GS Labs was on notice that Savista expected GS Labs to pay for those services.

60. Compared to normal collection services, the services that Savista provided to GS Labs were extraordinarily difficult and valuable because of GS Labs' conduct described above.

WHEREFORE, Plaintiff demands judgment in its favor and against GS Labs on Count Three of this Complaint for the reasonable amount of its services to be proven at trial, plus prejudgment

interest, court costs, and postjudgment interest.

## COUNT FOUR
## UNJUST ENRICHMENT

61. As Paragraph 61 of this Complaint, Plaintiff incorporates Paragraphs 1 through 60 of this Complaint.

62. Savista asserts this claim in the alternative in case the Contract is for some reason deemed unenforceable.

63. Savista performed services for GS Labs in April through July 2023 that led to GS Labs being enriched, and Savista being impoverished, with a relationship between the enrichment and impoverishment, and a lack of justification. Furthermore, for purposes of this Count, which is asserted in the alternative, Savista lacks an adequate remedy at law.

WHEREFORE, Plaintiff demands judgment in its favor and against GS Labs on Count Four of this Complaint for the reasonable amount of the unjust enrichment to be proven at trial, plus prejudgment interest, plus court costs, plus postjudgment interest.

### Place of Trial

Savista requests that the trial of this case be in Omaha, Nebraska.

Dated September 6, 2024               Respectfully submitted,

SAVISTA, LLC

By: s/*Patrick E. Brookhouser, Jr.*
Patrick E. Brookhouser, Jr. # 19245
Matthew G. Munro # 26190
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, NE 68102
(402) 341-3070 phone
(402) 341-0216 fax
pbrookhouser@mcgrathnorth.com
mmunro@mcgrathnorth.com

Martin R. Martos (Illinois Bar No. #6303908)
(Admitted to the Bar of this Court)
FOX ROTHSCHILD LLP
321 N. Clark Street, Suite 1600
Chicago, IL 60654
Telephone:　　312.517.9200
Facsimile: 312.517.9201
mmartos@foxrothschild.com